The PEOPLE of the State of Colorado, Complainant,

v.

Leslie Arnold KAEMINGK, Attorney–Respondent.

No. 88SA193.

Supreme Court of Colorado, En Banc.

March 20, 1989.

---

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Chief Deputy Disciplinary Prosecutor, Denver, for complainant.

Leslie Arnold Kaemingk, pro se.

KIRSHBAUM, Justice.

On August 25, 1987, a formal complaint was filed with the Grievance Committee charging the respondent, Leslie Arnold Kaemingk, with two counts of professional misconduct. On February 23, 1988, a hearing board received evidence from the parties with respect to the first count.[1] The respondent and the deputy disciplinary counsel entered into a stipulation of facts with respect to the second count. The hearing board subsequently entered findings of fact and a recommendation that the respondent be suspended from the practice of law for one year and one day. We agree with the recommendation.

The respondent was admitted to the practice of law in Colorado on October 21, 1976, and since that time has been registered as an attorney with this court. Accordingly, pursuant to C.R.C.P. 241.1(b), he is subject to the jurisdiction of this court and its Grievance Committee respecting his conduct as an attorney.

### Count I

In June of 1986, Shirley DeShea retained the respondent, then employed by the law firm of Dickinson & Herrick–Stare, to represent her in connection with injuries she sustained in a fall at a restaurant.[2] When the respondent left that firm on September 30, 1986, and joined the firm of Scates and Bergner, P.C., he took the DeShea file with him. At that time, DeShea owed Dickinson & Herrick–Stare the sum of $1,116.49 for costs advanced by the firm in another case.[3]

The respondent advised DeShea that his new law firm did not handle contingency fee cases and that she would have to retain another lawyer unless she agreed to settle her claim against the restaurant. In January 1987, DeShea agreed to accept $5,000 in settlement of her claim against the restaurant and to divide that sum with respondent.[4] She subsequently issued a check payable to the respondent personally in the amount of $2,500 and instructed him to pay Dickinson & Herrick–Stare the amount she owed that firm for costs. The respondent

---

1. The complaining witness with respect to Count I of the complaint was unable to attend the hearing because of her medical condition; however, her testimony was taken by telephone and the respondent, appearing *pro se*, conducted a cross-examination of the witness.

2. In his opening statement, the respondent indicated that he had represented DeShea and her husband in several matters before he joined Dickinson & Herrick–Stare, and that the DeSheas became clients of that firm when he joined it. The record certified to this court does not contain a transcript of the respondent's testimony.

3. Dickinson & Herrick–Stare also represented DeShea in connection with injuries she had sustained in an automobile accident. Although the hearing panel found as a fact that the $1,116.49 sum was owed in connection with DeShea's claim against the restaurant, the uncontroverted evidence establishes the fact that these costs were incurred by Dickinson & Herrick–Stare in connection with the claims arising from the automobile accident.

4. Although the hearing panel found as a fact that the respondent "convinced" DeShea to accept this settlement offer, DeShea's statement does not support such finding. DeShea did testify that she agreed to divide the $5,000 settlement equally with the respondent on the condition that her debt to Dickinson & Herrick–Stare would be paid by the respondent from his $2,500.

agreed.[5] However, he retained all of the $2,500 for his personal use and did not pay any portion thereof to his former law firm. This conduct violated C.R.C.P. 241.6 and the following provisions of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and DR9–102(A) (failing to preserve identity of client funds).

## Count II

In August of 1986, the respondent agreed to represent Yolanda Quintana. He advised her that he was leaving Dickinson & Herrick–Stare effective September 30, 1986, and that he would take her case with him. Quintana agreed and gave him a check in the amount of $500 payable to him personally. The respondent did not deposit this check to his firm's trust account, but instead endorsed the check and deposited it into a personal checking account he and his wife owned.

After the respondent joined the firm of Scates and Bergner, P.C., on October 1, 1986, he continued to work on this case before opening a client file for her on December 17, 1986. The respondent continued to record time and perform services for Quintana on other matters. When Scale and Bergner, P.C. sent her a bill in the amount of $250 for services rendered by the respondent, she informed the law firm of her $500 payment to the respondent.

L. Frank Bergner subsequently met with the respondent.[6] The respondent agreed that if he owed the money, he would personally remit $250 to the firm for work he did on the subsequent matter as a member of the firm. He also advised Bergner that his wife had mistakenly deposited Quintana's check into their personal checking account. However, the respondent himself had endorsed and deposited the check. The respondent has not paid $250 to Scates and Bergner, P.C. This conduct violated C.R.C. P. 241.6 and the following provisions of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR5–101(A) (accepting employment which may be affected by his personal interests without consent of client after full disclosure); and DR9–102(A) (failing to preserve identity of client funds).

In both of these matters the respondent wrongfully retained funds given to him by a client. In each case he knew that the funds were owed to the law firm by which he was employed. When an attorney knowingly deals improperly with a client's funds and the conduct results in injury or potential injury to a client, suspension from the practice of law is an appropriate sanction. ABA *Standards for Imposing Lawyer Sanctions,* § 4.12. Both DeShea and Quintana suffered potential, if not actual, injury as the result of the respondent's improper retention of the funds they entrusted to him. Rather than advancing the interests of his clients, the respondent applied their money to satisfy personal obligations. Such conduct contravenes the fiduciary obligations of an attorney to a client and, consequently, severely undermines an essential aspect of the attorney-client relationship.

The respondent's misleading statements to his employer when confronted with questions concerning the deposit of Quintana's money into his personal account constitutes an aggravating circumstance to be considered in determining an appropriate sanction. The record also reveals that on December 17, 1987, the respondent received a private censure for professional misconduct

---

**5.** DeShea testified initially that when she received the $5,000 settlement check the respondent told her he would use his $2,500 for personal matters, that she immediately asked him about the amount due Dickinson & Herrick–Stare, and that the respondent replied "Don't worry about it; I have taken care of it." She later testified that when the respondent said he was going to use the $2,500 for personal reasons and she asked about the Dickinson & Herrick–Stare bill, the respondent said "I will take care of that; don't worry about that."

**6.** Although the stipulation of facts with respect to Count II does not so indicate, we assume Mr. Bergner is a member of the firm of Scates and Bergner, P.C.

**1250**

in three separate matters. In one of those incidents the respondent's conduct violated DR1–102(A)(4) of the Code of Professional Responsibility, which rule prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. It is noteworthy that the respondent's misconduct with respect to DeShea and Quintana occurred at approximately the same time the three matters addressed in the letter of private censure were being considered by the Grievance Committee and this court. The respondent's conduct in these matters evidences a pattern of misconduct and involves multiple offenses, which factors may also be considered as aggravating factors for purposes of imposing sanctions. ABA *Standards for Imposing Lawyer Sanctions,* §§ 9.22(a), (c), and (d).

We conclude that the respondent's conduct, when coupled with a private censure for three matters on December 17, 1987, amply warrants suspension of the respondent from the practice of law. Accordingly, pursuant to C.R.C.P. 241.21(a), we order that Leslie Arnold Kaemingk be suspended from the practice of law for a period of one year and one day commencing thirty days after the date of this opinion. The respondent is further ordered to pay the costs of this disciplinary proceeding, in the amount of $417.56, within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600—17th Street, Suite 500S, Denver, Colorado 80202–5435. The respondent is also ordered to pay the sum of $1,116.49 to the firm of Dickinson & Herrick–Stare and the sum of $250 to the firm of Scates and Bergner, P.C., within ninety days of the date of this opinion.